IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES *ex rel.* HEATHCOTE HOLDINGS CORP, INC., Relator <br><br> Plaintiffs, <br><br> v. <br><br> REVLON INC., and REVLON CONSUMER PRODUCT, CORPORATION <br><br> Defendants. | Case No. 10-cv-1936 <br><br> Judge Mathew Kennelly |

**RELATOR HEATHCOTE HOLDINGS CORP, INC.'S RESPONSE
IN OPPOSITION TO DEFENDANTS' MOTION TO STAY**

HEATHCOTE HOLDINGS CORP, INC., as qui tam relator on behalf of the United States ("Relator"), submits this Response in Opposition to REVLON INC., and REVLON CONSUMER PRODUCT, CORPORATION'S ("Defendants") Motion to Stay:

## I.  Introduction

A patent is a contract between the public and an inventor. *Grant v. Raymond*, 31 U.S. 218, 242 (1832). This contract gives monopoly-like rights to the inventor for a limited time. *Scott Paper Co. v. Marcalus Mfg. Co.*, 326 U.S. 249, 255 (1945) ("Congress has given to the inventor the opportunity to secure the material rewards for his invention for a limited time, on condition that . . . upon the expiration of the patent the public be left free to use the invention"). Thus, when patent rights expire, the patent owner should remove the patent marking from its product to allow the public know that it is free to use the invention. To discourage false patent marking, Congress provides for a fine of up to "$500 per offense" and offers citizens a reward (one half of the fine) for collecting that fine on the government's behalf. 35 U.S.C. § 292.

Relator alleges that Defendants have violated Section 292 of the Patent Act by falsely marking various cosmetic products with expired United States Patent No. 4,861,179 with the

intent of deceiving the public into believing that the products are still covered by a valid patent. *See* Complaint, ¶¶ 19, 25, 30, 35, 40, 45 and 50. Relator is suing on behalf of the United States, as § 292 specifically provides. *See, e.g., Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765, 768, fn. 1 (2000) (identifying § 292 as one of the few approved *qui tam* statutes).

Defendants have moved to stay this case, claiming in a cursory fashion that two pending Federal Circuit appeals "are likely to announce controlling law on *qui tam* standing and the legal test for intent to deceive, both of which are issues raised by Revlon's Motion to Dismiss." Dkt. No. 9, p. 1. Defendants' argument is misleading and flawed. First, Defendants' motion ignores two recent Federal Circuit decisions interpreting § 292 which strongly support Relator's claims - *The Forest Group, Inc. v. Bon Tool Company*, 590 F.3d 1295 (Fed. Cir. 2009) and *Clontech Laboratories, Inc. v. Invitrogen Corporation*, 406 F.3d 1347, 1356 (Fed. Cir. 2005).

As to Defendants' first argument, they point the pending appeal of *Stauffer v. Brooks Bros., Inc.*, 615 F.Supp.3d 248 (S.D. N.Y. 2009) which dismissed a private citizen's § 292 claim on the alleged lack of Article III standing. Defendants' argument blithely ignores the fact that following the *Stauffer* district court decision, the Federal Circuit in *Forest Group* rejected a similar Article III standing argument that was raised by a false-marker. The Honorable Milton I. Shadur recently *sua sponte* rejected a false-marking defendant's identical standing argument like the one raised here, holding that *Forest Group* rejected the argument. *See, Zojo Solutions, Inc. v. The Stanley Works*, Mem. Op. at 3, 4 (**Exhibit A**).

Defendants also point to the *Pequignot* appeal, claiming that an affirmance of the district court's summary judgment ruling that the alleged false-marker did not act with "intent to deceive" the public will result in the outright dismissal of this case. Aside from the fact that

Defendants are relying on summary judgment ruling, Defendants ignore that the Federal Circuit in *Clontech* previously articulated the meaning of § 292's phrase "intent to deceive." *Clontech* held that "[i]ntent to deceive is a state of mind arising when a party acts with sufficient knowledge that what it is saying is not so and consequently that the recipient of its saying will be misled into thinking that the statement is true." *Clontech*, 406 F.3d at 1352. *Clontech* also held "the fact of misrepresentation coupled with proof that the party making it had knowledge of its falsity is enough to warrant drawing the inference that there was a fraudulent intent." *Id.* *Clontech*, however, found that the false-marker could avoid liability by demonstrating that it had a "reasonable belief that the articles were properly marked." *Id.* at 1353.

In contrast to initial pleading stage of the present case, the *Pequignot* appeal focuses on a fact specific issue of intent to deceive that was decided after discovery had taken place where the alleged false-marker hid behind an advice-of-counsel defense where it essentially argued that it had a reasonable belief that the articles were properly marked. Accordingly, the *Pequignot* appeal will be confined to its specific facts.

Viewed against this backdrop, it is clear that what Defendants are really saying is that two separate panels of the Federal Circuit *may* change *established* circuit law concerning false patent marking, that these *potential* changes will directly relate to the facts of *this case*, that these decisions will resolve this case *in Defendants' favor*, and that no further appeals or petitions for rehearing will result. Accordingly, Defendants' motion is based on nothing more than countless improbabilities, speculation and wishful thinking. In any event, it is extremely likely that both appeals will result in petitions for rehearing and appeals to the Supreme Court. Given the real possibility of petitions for rehearing and/or future appeals, it is clear stay will prejudice and/or

tactically disadvantage Relator because the stay allow memories to fade and documents to be lost or destroyed to the detriment of Relator.

Finally, while it is possible that Defendants' motion was legitimately brought with a genuine belief that Federal Circuit will deliver <u>two</u> "Hail Mary" decisions directly on point to Defendants within a short time frame, the real reason the motion has been brought it is buy Defendants time to persuade Congress to absolve them of their misconduct by amending Section 292 of the Patent Act to *eliminate* the present cause of action.[1]  Significantly, Defendants have neglected to inform the Court of this pending legislation.  Ironically, if Congress amends § 292, it will be depriving the government of one-half of the proceeds of any potential settlement or judgment in the various pending causes of action.  Should Congress amend § 292 in this manner, there is no doubt that relators across the country will challenge the amendment.

## II. <u>Standard of Review</u>

"'The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'" *Se-Kure Controls, Inc. v. Sennco Solutions, Inc.*, 675 F.Supp.2d 877, 878 (N.D. Ill. 2009) (quoting *Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936)). *See also, Panduit Corp. v. Chartsworth Products, Inc.*, 2005 WL 577099, *1 (N.D. Ill. 2005) (granting a

---

[1]  At the behest of corporations that have been sued for falsely marking their products, the Senate Judiciary Committee has added a provision to the Patent Reform Act that would amend section 292(b) to remove the *qui tam* nature of the statute. The proposed amendment to 35 U.S.C. § 292(b) reads: "(b) A person who has suffered a competitive injury as a result of a violation of this section may file a civil action in a district court of the United States for recovery of damages adequate to compensate for the injury." S. 515, 111th Cong. (2010). A bill containing the same language was recently introduced in the House of Representatives as well. *See* H.R. 4954, 111th Cong. (2010). Both the Senate provision and the House bill would apply to all cases pending on or after the date the legislations are passed. In any event, patent reform appears to have stalled. *See* **Exhibit F**.

stay pending PTO re-examination of patents at issue in the litigation, which stay was contingent on movant taking steps to ameliorate prejudice to the non-movant).

"In deciding whether a stay is appropriate, courts consider the following factors: (1) whether a stay will unduly prejudice or tactically disadvantage the non-moving party; (2) whether a stay will simplify the issues in question and streamline the trial, and (3) whether a stay will reduce the burden of litigation on the parties and on the court." *Se-Kure Controls*, 675 F.Supp.2d at 879 (denying stay as to two of the three patents at issue in the litigation; granting stay regarding same patent that was at issue on appeal before the Federal Circuit).

Defendants claim that the outcomes of the two appeals "are bound to simplify . . . the issues" and suggest that "a stay will substantially reduce the burdens of litigation of both parties and the court." Dkt. No. 6. Defendants, however, completely fail to meet their burden of persuasion on these points. Absent is any discussion of how these decisions will "simply the issues" confronting this Court, nor is there any analysis offered to support the conclusory argument that a say will "substantially reduce the burdens of litigation" as Defendants claim.

At times, Defendants' motion appears to suggest that this Court should stay this case because "everyone else is doing it." The Honorable Charles Kocoras, when confronted with a similar argument, that "two of the sister courts here [Judges Hard and Grady] have stayed false marking cases," Judge Kocoras cleverly responded "[t]ell them that their brother didn't go along with the deal." *See* **Exhibit B** (Transcript of April 27, 2010 hearing a pp. 4-5).

III. **Background – Federal Circuit Decisions Involving Section 292**

The applicable statutory language provides as follows:

(a) . . . Whoever marks upon, or affixes to, or uses in advertising in connection with any unpatented article, the word "patent" or any work or numbering importing that the same is patented, for the purpose of deceiving the public . . . shall be fined not more than $500 for every such offense.

5

(b) Any person may sue for the penalty, in which event one-half shall go to the person suing and the other to the use of the United States.

35 U.S.C. §292.

In December of 2009, the Federal Circuit recognized that Congress enacted 35 U.S.C. §292 with the purpose of protecting the *public* (relators) from having companies falsely claim that a product is covered by a particular patent when it is not. *The Forest Group, Inc. v. Bon Tool Company*, 590 F.3d 1295, 1303-4 (Fed. Cir. 2009). *Forest Group* held that the phrase "$500 for every such offense" meant that a false marker should be penalized up to $500 for each article on which it placed a false marking as part of an incentive-based system:

> The fact that the statute provides for *qui tam* actions further supports the per article construction. Penalizing false marking on a per decision basis would not provide sufficient financial motivation for plaintiffs — who would share in the penalty — to bring suit.

*Id.* at 1303-04.[2] The Federal Circuit *rejected* an argument that such an interpretation would lead to the unwarranted creation of a "cottage industry" of citizen relators who would be incentivized to pursue such claims on behalf of the government. To the contrary, *Forest Group* stated that Congress intended to provide the public with the ability to police false marking:

> Rather than discourage such activities, the false marking statute explicitly permits qui tam actions. By permitting members of the public to sue on behalf of the government, Congress allowed individuals to help control false marking.

---

[2] *Forest Group* was preceded by the Federal Circuit's earlier discussion in *Clontech Labs v. Invitrogen Corporation* of the requirements necessary for a plaintiff to obtain the civil fine. In *Clontech*, the Federal Circuit explained several features of the statute, including: (a) what it means to falsely mark an unpatented article; and (b) the level of intent required to show that the defendant had falsely marked a product "for the purpose of deceiving the public." *Clontech Laboratories, Inc. v. Invitrogen Corporation*, 406 F.3d 1347 (Fed. Cir. 2005). In this regard, the Federal Circuit's definition of false marking is straightforward: "[a]ccording to the statute, when an unpatented article is marked with the word 'patent' or any word or number that imports that the article is patented, and such marking is for the purpose of deceiving the public, the fine is invoked." 406 F.3d at 1352. Accordingly, if a patent is marked with multiple patent numbers, each and every patent marked on that article must be valid (*e.g.*, not expired) and must have at least one claim that covers the article. *Id.* and 1356-7.

*Id.*

Contrary to Defendants' position that Relator and the public have not suffered a recognized injury, the Federal Circuit has held: "[i]n each instance where it is represented that an article is patented, a member of the public desiring to participate in the market for the marked article must incur the cost of determining whether the involved patents are valid and enforceable." *Clontech Labs*, 406 F.3d at 1356-57, fn. 6. *See also, The Forest Group*, 590 F.3d at 1303 (citing the *Clontech Labs*). Accordingly, marking products with expired patents with intent to deceive violates Section 292. *See, e.g., Pequignot v. Solo Cup*, 540 F.Supp.2d 649, 652 (E.D. Va. 20008) ("An article that was once protected by a now-expired patent is no different than an article that has never received protection from a patent. Both are in the public domain"); *Brinkmeier v. Graco Children's Products, Inc.*, 2010 WL 545896, *3 (D. Del. 2010) ("Under *Clontech*, it appears that a product marked with expired patents and valid patents would be an unpatented article for purposes of §292"); *DP Wagner Manufacturing, Inc. v. Pro Patch Systems, Inc.*, 434 F.Supp.2d 445, 452, fn. 3 (S.D. Tex. 2005) ("It is self evident that once a patent has expired it provides no protection for the article that it described"). *See also, Thomas & Betts Corp. v. Panduit Corp.*, 65 F.3d 654, 658 (7th Cir. 1995) ("The right to copy is even more robust when the copied product was previously patented but the patent has expired"). Here, because the patents marked on the products in question have expired, the patents do not "cover" the products.

Contrary to this weight of authority, Defendants carelessly argue that placing expired patents on a product is not a violation of the statute because it is simple to determine whether a patent has expired. This Court may take judicial notice that is not so simple for a member of the public, a lawyer, or even a judge to determine when a patent expires. There are extensions that a patentee could receive that would make the period longer, a foreign priority may exists, there may be a terminal disclaimer (see 37 CFR §1.321) or a failure to pay a maintenance fee that

6566153v2 910016 57483

would make the period shorter, and there are statutes at play as well. See 35 U.S.C. §§119, 120, 121, and 154(c)(1); *Cardiac Pacemakers, Inc. v. St. Jude Medical, Inc.*, 381 F.3d 1371, 1383-4 (Fed. Cir. 2004) (district court erred in computing expiration date); *Golan v. Pingel Enterprise, Inc.*, 310 F.3d 1360, fn. 1 (Fed. Cir. 2002) (lawyer erred in computing the expiration date).[3] Even the U.S. Patent Office has been found to have incorrectly calculated the term of a patent in relation to FDA regulations. *Wyeth v. Kappos*, 591 F.3d 1364, 1370-72 (Fed. Cir. 2010).

IV. **Argument – Defendants' Request For a Stay Should Be Rejected**

    A. **Relator Has Standing to Pursue This Case in Light of *Forest Group***

As noted above, during briefing in *Forest Group*, the appellee raised the issue of a *qui tam* relator's standing to bring a claim in the absence of a direct personal injury:

> A rule that a *qui tam* plaintiff is entitled to recover a per article penalty of up to $500 could make Section 292 a potential windfall for enterprising patent attorneys and would-be litigants. The statute permits "any person" to sue . . . . Because there is no standing requirement, a *qui tam* plaintiff can sue for false marking even if he did not suffer a competitive disadvantage and even if he was not a consumer of the falsely marked article.

*See*, **Exhibit D**, Appellee's Brief, 2009 WL 870156 (Fed. Cir. 2009), p. 13. The Federal Circuit had two possible responses to this argument: (a) it could have stated that such a plaintiff would not have standing, and thus there was no need to fear claims from "enterprising litigants;" or (b) it could have stated that the statute in fact encouraged enterprising litigants to bring such claims despite the absence of direct injury. The Federal Circuit chose the latter course.[4] The Federal

---

[3] It appears that Defendants have incorrectly calculated the expiration of the patent by ignoring that the patent in question here is actually a divisional patent that claims priority to another patent.

[4] Had the defendant failed to raise this standing argument, the Federal Circuit was obligated to dismiss the case sua sponte if it believed that standing did not exist. *Fuji Photo Film Co. v. Int'l Trade Comm'n*, 474 F.3d 1281, 1289 (Fed.Cir.2007). The court's silence on this issue demonstrates standing existed.

6566153v2 910016 57483

Circuit's rejection of an alleged jurisdictional problem with the relator's claim was recently highlighted by Judge Shadur when he *sua sponte* denied a standing-based motion:

> *Forest Group* has confronted — and here too rejected — the notion that private plaintiffs such as Zojo here were not intended to be granted authority to bring this type of action * * * [I]f the Federal Circuit had perceived that the statute posed a subject matter jurisdictional problem, it would have been obligated to raise and address that issue sua sponte.

*Zojo Solutions, Inc. v. The Stanley Works*, Mem. Op. at 3, 4 (**Exhibit A**).

Here, Defendants ignore *Forest Group* and rely solely on *Stauffer v. Brooks Bros., Inc.*, 615 F.Supp.2d 248 (S.D. N.Y. 2009) which dismissed, against the weight of authority, a private citizen's Section 292 claim on the alleged absence of Article III standing - *prior* to the *Forest Group* decision. Dkt. No. 9, pp. 2-3 ("The district court found these allegations of public harm insufficiently 'concrete and particularized' or 'actual or imminent' to confer standing on Stauffer as a *qui tam* relator"). Defendants, however, neglect to point out that the United States has filed an Brief in support of the reversal of the *Stauffer* district court's opinion. *See* **Exhibit E**. *See also, Pequignot v. Solo Cup Company*, 640 F.Supp.2d 714, 720-1 (E.D. Va. 2009) (finding standing for the 292 relator under the rule structure set out in Vermont Agency of Natural Resources).

As noted above in Section III, courts have held that the costs incurred by the public in determining whether the claimed patents are valid is a recognized injury. More significantly, Article III standing does not require Relator to incur any costs of reviewing the validity of a patent. *See, e.g., Juniper Networks v. Shipley*, 2010 WL 986809, *6 (N.D. Cal. 2010) ("in *qui tam* actions, the injury need not be suffered by the relator; injury in fact to the United States is

sufficient;" relator had standing to bring 292 claim).[5] *See also, Bonito Boats v. Thunder Craft Boats,* 489 U.S. 141, 161-62 (1989) (holding that the public is entitled to rely on the marking as a ready means of identifying the status of the intellection property, citing *Wine Railway Appliance Co. v. Enterprise Equipment Co.,* 297 U.S. 397 (1936)).

In summary, the district court in *Stauffer* neglected to follow established law and it is unlikely that it will be affirmed. Given the fact that *Forest Group* resolves the legal issue at hand (as Judge Shadur observed), and given that *Stauffer* was decided <u>before</u> the Federal Circuit's ruling in *Forest Group*, there is no reason for this Court to view *Stauffer* as persuasive on the jurisdictional issue. *See also, Harrington v. Ciba Vision Corporation,* 08 C 251, Tr. at 5-6, 116-122 (W.D. N.C. 2009) (finding standing for the Section 292 relator after considering the *Stauffer* opinion, even before *The Forest Group* ruling) (**Exhibit C**).

Accordingly, this case should not be stayed in light of *Stauffer*.

**B.** ***Clontech* Has Articulated the Meaning of the Phrase "Intent to Deceive"**

Plaintiff's motion ignores the fact that the Federal Circuit in *Clontech* identified the standard to apply to determine whether a product was falsely-marked. To recap, the Federal Circuit has carefully considered and articulated the burden of proof in false marking cases:

> Intent to deceive is a state of mind arising when a party acts with sufficient knowledge that what it is saying is not so and consequently that the recipient of its saying will be misled into thinking that the statement is true. Intent to deceive, while subjective in nature, is established in law by objective criteria. Thus, "objective standards" control and "the fact of misrepresentation coupled with proof that the party making it had knowledge of its falsity is enough to warrant drawing the inference that

---

[5] While Defendants note that a district court within the same district as *Stauffer* granted a stay, they have provided no analysis of this case other that claiming that the court noted that the result of the appeals "will certainly be informative" (Dkt. 9 at p. 6). Bizarrely, despite offering no analysis of the *Public Patent Foundation vs. GlaxoSmithKline Consumer Healthcare, L.P.,* case, or the *Pequignot* case, Defendants optimistically suggest that "those decisions" will be "altogether dispositive." *Id.*

> there was a fraudulent intent." Thus, under such circumstances, the mere assertion by a party that it did not intend to deceive will not suffice to escape statutory liability. Such an assertion, standing alone, is worthless as proof of no intent to deceive where there is knowledge of falsehood. But in order to establish knowledge of falsity the plaintiff must show by a preponderance of the evidence that the party accused of false marking did not have a reasonable belief that the articles were properly marked (i.e., covered by a patent). Absent such proof of lack of reasonable belief, no liability under the statute ensues.

*Clontech Labs*, 406 F.3d at 1352-3. Given this clear rule, Defendants cannot show that it is likely that the Federal Circuit will change the burden of proof so drastically — and with such finality — that it will affect the pending litigation throughout the country. *See, e.g., Forest Group*, 590 F.3d at 1300 (quoting the *Clontech* standard regarding the burden of proof).

Here, Defendants point to the appeal of *Pequignot v. Solo Cup Company*, but fail to even discuss the case. The district court opinion in *Pequignot* was a fact specific decision related to what the discovery in that case demonstrated. 640 F.Supp.2d at 797 ("under *Clontech*, a false marking with knowledge of falsity creates a rebuttable presumption of intent to deceive. . . . Whether evidence suffices to rebut the presumption turns on a fact-specific examination of the defendant's conduct"). There, Solo Cup claimed that they did not intend to violate Section 292 and claimed that they were advised by an attorney to not bother to remove an expired patent from a plastic cup lid until the mold for the lid had become unusable. *Id* at 793. Solo Cup argued that its purported reliance on advice of counsel meant that it did not intend to violate Section 292. *Id* at 793-94. The district court accepted this argument and awarded summary judgment in favor of Solo Cup on the eve of trial. *Id* at 799-80.

The issue on appeal in *Pequignot* is whether reliance on counsel is a defense to knowingly marking a product with decades old patent. Oddly, if Solo Cup's position is affirmed by the Federal Circuit, attorneys could provide their clients with a "get out of jail free" card, and could insulate clients from liability by offering bad advice – in the form of telling a client that it

is "okay" to violate Section 292. Even if *Pequignot* is affirmed, this case should not be stayed in light of *Pequignot* because Defendants have not demonstrated that they relied on advice of counsel in relation to the impact of Section 292. Even if they had, "[w]hether conduct rises to the level of statutory deception is a question of fact." *Clontech*, at 1353.

Significantly, Defendants do not claim that *Pequignot* articulated a higher threshold showing to demonstrate intent to deceive than what was identified in *Clontech*. Even if the Federal Circuit were to modify the level of proof necessary to prevail in a Section 292(a) claim, any such modification will not play *until the parties have completed discovery in this case* given the fact specific nature that each case will present. Accordingly, there is no reason to stay this case at this point in time in any event.

### C. Defendants Have Failed to Satisfy the Elements of a Stay

#### 1. Relator Will Suffer Undue Prejudice and Tactical Disadvantage

As set forth above, the current state of false-marking law in the Federal Circuit is very much supportive of *qui tam* claims brought by individuals "any person." Indeed, in *Forest Group*, the Federal Circuit stated that its interpretation of "per offense" as "per article marked" was supported by Congress' articulated desire to motivate citizens with a reward large enough that they would pursue claims against false markers on the government's behalf. 590 F.3d at 1304. Dissatisfied with the current state of the law, Defendants seek a stay in the hopes of getting one or two tactical advantages: (a) delay the case in the hope that the Federal Circuit or, ultimately, the United States Supreme Court, changes current law enough to reduce Defendants' exposure in these case; or (b) delay the case in the hope that Congress amends § 292 to absolve Defendants of their liability for false-marking. A hoped-for-change in the law whether through an appellate decision or legislative amendment is not a basis for a stay. Even if it was a proper

6566153v2 910016 57483

basis for a stay, Relator will be prejudiced by any stay because the stay will allow memories to fade and may result in the inadvertant destruction of relevant documents.

Although Defendants claim that Relator will suffer no injury from a stay, this argument completely ignoring the fact the Relator brings this claim on behalf of the United States, to redress wrongs and harm to the public and that the government may recoup ½ of any settlement or award. The Federal Circuit has made it clear that false marking harms the public interest because false marking:

> misleads the public into believing that a patentee controls the article in question (as well as like articles), externalizes the risk of error in the determination, placing it on the public rather than the manufacturer or seller of the article, and increases the cost to the public of ascertaining whether a patentee in fact controls the intellectual property embodied in an article.

*Clontech*, 406 F.3d at 1356-57. As the United States' Brief explains, false marking injures the public for a variety of reasons, including "increasing the cost to the public of ascertaining whether a patentee in fact controls the intellectual property embodied in an article." **Exhibit E**, p. 7, citing *Clontech Labs*. Because a stay will harm the public, Defendants must make a very significant showing of "hardship" or "inequity" to warrant a stay. *Se-Kure Controls*, 675 F.Supp.2d at 878-9 ("If there is even a fair possibility that the stay will work damage to someone else, 'the party seeking the stay 'must make out a clear case of hardship or inequity in being required to go forward.'").

### 2. A Stay Will Neither Simplify Issues and Streamline the Trial Nor Will a Stay Reduce the Burden of Litigation

It is Defendants' burden to demonstrate that rulings from the two pending Federal Circuit will so affect this case as to make it worth the delay to await those decisions. As shown above, these questions have already been answered by prior Federal Circuit decisions. A contrary answer by either panel of the Federal Circuit would be surprising given current law. And as

noted above, the *Pequignot* appeal is highly fact specific and even if it is affirmed, it will not change the discovery that needs to be completed in this case. Lastly, Defendants have failed to demonstrate hardship or inequity that they will suffer from proceeding to litigate this case.

## V. Conclusion

The *Stauffer* case, which Defendants base part of the basis for the proposed stay, ignores well established, Federal Circuit law. As *Forest Group* recently held, the incentive-based system set forth in the statute was placed there so that people like the Relator would pursue false-marking claims on behalf of the United States. *Forest Group*, 590 F.3d at 1303-34 ("the false marking statute explicitly permits qui tam actions. By permitting members of the public to sue on behalf of the government, Congress allowed individuals to help control false marking.")

Given the current state of the law (*Clontech Labs* and *The Forest Group*), the position of the United States in support of that current state of the law, it is unlikely that the Federal Circuit is likely to change the standing law by affirming the *Stauffer* decision. This is especially true given the fact that *Stauffer* was decided prior to the Federal Circuit's opinion in *Forest Group*. Consequently, Defendants cannot demonstrate that awaiting a ruling in *Stauffer* will lead to the affirmance of *Stauffer*. Accordingly, it is inappropriate for this Court to stay this case on the unlikely event that the Federal Circuit will ignore earlier precedent and rule contrary to the position that it supported by the United States.

Finally, the Federal Circuit in *Clontech* carefully considered and articulated the burden of proof in false marking cases. *See also, Forest Group*, 590 F.3d at 1300 (quoting the *Clontech* standard regarding the burden of proof). Given this clear rule, Defendants cannot show that it is likely that the Federal Circuit will change the burden of proof so drastically - and with such finality - that it will affect the pending litigation throughout the country. As noted above, the

*Pequignot* case will be decided on its facts, and on a defense that has yet to be raised in the present case.

WHEREFORE, for the above reasons, Relator respectfully requests that this Court deny the Defendants' Motion to Stay.

Respectfully submitted,

**Attorney for Relator HEATHCOTE HOLDINGS CORP, INC.**

By: /s/ James C. Vlahakis
James C. Vlahakis
Hinshaw & Culbertson LLP
222 North LaSalle, Suite 300
Chicago, IL 60601
t 312-704-3715
f 312-704-3001
jvlahakis@hinshawlaw.com

6566153v2 910016 57483

## Certificate of Service

  I hereby certify that on June 8, 2010, I electronically filed the above document with the Clerk of the U.S. District Court, Northern District of Illinois, Eastern Division, using the CM/ECF system.

                By: <u>/s/ James C. Vlahakis</u>
                James C. Vlahakis
                Hinshaw & Culbertson LLP
                222 North LaSalle, Suite 300
                Chicago, IL 60601
                t 312-704-300
                f 312-704-3001
                jvlahakis@hinshawlaw.com

6566153v2 910016 57483