IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES *ex rel.* HEATHCOTE HOLDINGS CORP, INC., Relator<br><br>Plaintiffs,<br>v.<br><br>REVLON INC., and REVLON CONSUMER PRODUCT, CORPORATION<br><br>Defendants. | Case No. 10-cv-1936<br><br>Judge Mathew Kennelly |

**RELATOR HEATHCOTE HOLDINGS CORP, INC.'S RESPONSE
IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

HEATHCOTE HOLDINGS CORP, INC., as qui tam relator on behalf of the United States ("Relator"), submits this Response in Opposition to REVLON INC., and REVLON CONSUMER PRODUCT, CORPORATION'S ("Defendants") Motion to Dismiss:

**I.   Introduction**

A patent is a contract between the public and an inventor. *Grant v. Raymond*, 31 U.S. 218, 242 (1832). This contract gives monopoly-like rights to the inventor for a limited time. *Scott Paper Co. v. Marcalus Mfg. Co.*, 326 U.S. 249, 255 (1945) ("Congress has given to the inventor the opportunity to secure the material rewards for his invention for a limited time, on condition that . . . upon the expiration of the patent the public be left free to use the invention"). Thus, when patent rights expire, the patent owner should remove the patent marking from its product to allow the public know that it is free to use the invention. To discourage false patent marking, Congress provides for a fine of up to "$500 per offense" and offers citizens a reward (one half of the fine) for collecting that fine on the government's behalf. 35 U.S.C. § 292.

Relator alleges that Defendants have violated Section 292 of the Patent Act by falsely marking various cosmetic products with expired United States Patent No. 4,861,179 with the

intent of deceiving the public into believing that the products are still covered by a valid patent. *See* Complaint, ¶¶ 19, 25, 30, 35, 40, 45 and 50. Relator is suing on behalf of the United States, as § 292 specifically provides. *See, e.g., Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765, 768, fn. 1 (2000) (identifying § 292 as one of the few approved *qui tam* statutes).

Defendants have moved to dismiss this case, claiming in a cursory fashion that Relator lacks Article III standing and that Relator has failed to properly allege "intent to deceive." Dkt. No. 6, p. 4-10. Defendants also argue that they have not violated § 292 despite the fact that the subject patent that they affix to their products has expired. *Id.* at p. 10-11. Defendants' argument is misleading and flawed. Defendants' motion completely ignores two recent Federal Circuit decisions interpreting § 292 which strongly support Relator's claims - *The Forest Group, Inc. v. Bon Tool Company*, 590 F.3d 1295 (Fed. Cir. 2009) and *Clontech Laboratories, Inc. v. Invitrogen Corporation*, 406 F.3d 1347, 1356 (Fed. Cir. 2005).

As to Defendants' first argument, they point the case of *Stauffer v. Brooks Bros., Inc.*, 615 F.Supp.3d 248 (S.D. N.Y. 2009) which dismissed a private citizen's §292 claim on Article III (the *Stauffer* decision is now on appeal). Defendants' argument blithely ignores the fact that after the *Stauffer* district court decision, the Federal Circuit in *Forest Group* rejected an Article III standing argument that was raised by a false-marker. In fact, the Honorable Milton I. Shadur recently rejected a false-marking defendant's identical standing argument, *sua sponte* holding that *Forest Group* rejected the identical argument. *See, Zojo Solutions, Inc. v. The Stanley Works*, Mem. Op. at 3, 4 (**Exhibit A**).

Defendants second argument ignore that the Federal Circuit in *Clontech* articulated the meaning of § 292's phrase "intent to deceive." *Clontech* held that "[i]ntent to deceive is a state

of mind arising when a party acts with sufficient knowledge that what it is saying is not so and consequently that the recipient of its saying will be misled into thinking that the statement is true." *Clontech*, 406 F.3d at 1352. *Clontech* also held "the fact of misrepresentation coupled with proof that the party making it had knowledge of its falsity is enough to warrant drawing the inference that there was a fraudulent intent." *Id.* Defendants' Motion to Dismiss is misplaced because it invokes summary judgment standards and attempts to require a heightened pleading standard where one does not exist.

Defendants' third argument ignores cases that have held that the continued marking of products with expired patents fall within the prohibitions outlined by Section 292.

For these reasons, Defendants' Motion to Dismiss should be denied.

## II. Standard of Review

A court must accept as true the allegations of the complaint and draw all reasonable inferences in favor of plaintiff. *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007) (internal citation omitted). To survive a Rule 12(b)(6) motion, "the complaint need only contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting Fed.R.Civ.P. 8(a)(2)). The facts must provide the defendant with 'fair notice of what the ... claim is and the grounds upon which it rests. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). A plaintiff need not plead particularized facts, but the factual allegations in the complaint must be enough to raise a right to relief above the speculative level. *Id.*

Defendants have ignored these decisions in their attempt to graft on higher pleading standards than those required by the Federal Rules of Civil Procedure.

6574352v2 910016 57483

### III. Background – Federal Circuit Decisions Involving Section 292

The applicable statutory language provides as follows:

(a) . . . Whoever marks upon, or affixes to, or uses in advertising in connection with any unpatented article, the word "patent" or any work or numbering importing that the same is patented, for the purpose of deceiving the public . . . shall be fined not more than $500 for every such offense.

(b) Any person may sue for the penalty, in which event one-half shall go to the person suing and the other to the use of the United States.

35 U.S.C. §292.

In December of 2009, the Federal Circuit recognized that Congress enacted 35 U.S.C. §292 with the purpose of protecting the *public* (relators) from having companies falsely claim that a product is covered by a particular patent when it is not. *The Forest Group, Inc. v. Bon Tool Company*, 590 F.3d 1295, 1303-4 (Fed. Cir. 2009). *Forest Group* held that the phrase "$500 for every such offense" meant that a false marker should be penalized up to $500 for each article on which it placed a false marking as part of an incentive-based system:

> The fact that the statute provides for *qui tam* actions further supports the per article construction. Penalizing false marking on a per decision basis would not provide sufficient financial motivation for plaintiffs — who would share in the penalty — to bring suit.

*Id.* at 1303-04.

*Forest Group* was preceded by the Federal Circuit's earlier discussion in *Clontech Labs v. Invitrogen Corporation* of the requirements necessary for a plaintiff to obtain the civil fine. In *Clontech*, the Federal Circuit explained several features of the statute, including: (a) what it means to falsely mark an unpatented article; and (b) the level of intent required to show that the defendant had falsely mark a product "for the purpose of deceiving the public." *Clontech Laboratories, Inc. v. Invitrogen Corporation*, 406 F.3d 1347 (Fed. Cir. 2005). In this regard, the Federal Circuit's definition of false marking is straightforward: "[a]ccording to the statute, when

4

an unpatented article is marked with the word 'patent' or any word or number that imports that the article is patented, and such marking is for the purpose of deceiving the public, the fine is invoked." 406 F.3d at 1352. For example, if a patent is marked with multiple patent numbers, each and every patent marked on that article must be valid (*e.g.*, not expired) and must have at least one claim that covers the article. *Id.*, and 1356-7.

Significantly, the Federal Circuit *rejected* an argument that such an interpretation would lead to the unwarranted creation of a "cottage industry" of citizen relators who would be incentivized to pursue such claims on behalf of the government. To the contrary, *Forest Group* stated that Congress intended to provide the public with the ability to police false marking:

> Rather than discourage such activities, the false marking statute explicitly permits qui tam actions. By permitting members of the public to sue on behalf of the government, Congress allowed individuals to help control false marking.

*Id.*

## IV. Argument – Defendants' Motion to Dismiss Should Be Denied

### A. Relator Has Standing to Pursue This Case in Light of *Forest Group*

As noted above, during briefing in *Forest Group*, the appellee raised the issue of a *qui tam* relator's standing to bring a claim in the absence of a direct personal injury:

> A rule that a *qui tam* plaintiff is entitled to recover a per article penalty of up to $500 could make Section 292 a potential windfall for enterprising patent attorneys and would-be litigants. The statute permits "any person" to sue .... Because there is no standing requirement, a *qui tam* plaintiff can sue for false marking even if he did not suffer a competitive disadvantage and even if he was not a consumer of the falsely marked article.

*See*, Appellee's Brief, 2009 WL 870156 (Fed. Cir. 2009), p. 13. The Federal Circuit had two possible responses to this argument: (a) it could have stated that such a plaintiff would not have standing, and thus there was no need to fear claims from "enterprising litigants;" or (b) it could

have stated that the statute in fact encouraged enterprising litigants to bring such claims despite the absence of direct injury. The Federal Circuit chose the latter course.[1] The Federal Circuit's rejection of a jurisdictional problem with the relator's claim was recently highlighted by Judge Shadur where he *sua sponte* denied an motion to dismiss on standing and ordering the defendant to answer:

> *Forest Group* has confronted — and here too rejected — the notion that private plaintiffs such as Zojo here were not intended to be granted authority to bring this type of action * * * [I]f the Federal Circuit had perceived that the statute posed a subject matter jurisdictional problem, it would have been obligated to raise and address that issue sua sponte.

*Zojo Solutions, Inc. v. The Stanley Works*, Mem. Op. at 3, 4 (**Exhibit A**).

Here, Defendants ignore *Forest Group* and rely solely on *Stauffer v. Brooks Bros., Inc.*, 615 F.Supp.2d 248 (S.D. N.Y. 2009) which dismissed a private citizen's Section 292 claim on the alleged absence of Article III standing - *prior* to the *Forest Group* decision. Dkt. No. 9, pp. 2-3 ("The district court found these allegations of public harm insufficiently 'concrete and particularized' or 'actual or imminent' to confer standing on Stauffer as a *qui tam* relator").

Defendants, however, neglect to point out that the United States has filed an Amicus Brief in support of the reversal of the *Stauffer* district court's opinion. *See* **Exhibit B**. *See also, Pequignot v. Solo Cup Company*, 640 F.Supp.2d 714, 720-1 (E.D. Va. 2009) (finding standing for the 292 relator under the rule structure set out in Vermont Agency of Natural Resources).

In summary, contrary to Defendants' argument, Article III standing does not require Relator to incur any costs of reviewing the validity of a patent. *See, e.g., Juniper Networks v. Shipley*, 2010 WL 986809, *6 (N.D. Cal. 2010) ("in *qui tam* actions, the injury need not be

---

[1] Had the alleged false-marker failed to raise this standing argument, the Federal Circuit was obligated to dismiss the case *sua sponte*. *See, e.g., Fuji Photo Film Co. v. Int'l Trade Comm'n*, 474 F.3d 1281, 1289 (Fed.Cir.2007).

6

suffered by the relator; injury in fact to the United States is sufficient;" relator had standing to bring 292 claim).

In summary, the district court in *Stauffer* neglected to follow established law and it is unlikely that it will be affirmed. Given the fact that *Forest Group* resolves the legal issue at hand (as Judge Shadur observed), and given that *Stauffer* was decided <u>before</u> the Federal Circuit's ruling in *Forest Group*, there is no reason for this Court to view *Stauffer* as persuasive on the jurisdictional issue. *See also, Harrington v. Ciba Vision Corporation*, 08 C 251, Tr. at 5-6, 116-122 (W.D. N.C. 2009) (finding standing for the Section 292 relator after considering the *Stauffer* opinion, even before *The Forest Group* ruling) **(Exhibit C)**.

Accordingly, this case should not be dismissed in light of *Stauffer*.

**B.     Relator Has Adequately Alleged "Intent to Deceive" Consistent with Federal Circuit Precedent as Articulated by *Clontech* and *Forest Group***

Defendants' motion ignores the fact that the Federal Circuit in *Clontech* identified a straight-forward standard to apply to determine whether a product was falsely-marked. According to the court:

> Intent to deceive is a state of mind arising when a party acts with sufficient knowledge that what it is saying is not so and consequently that the recipient of its saying will be misled into thinking that the statement is true. Intent to deceive, while subjective in nature, is established in law by objective criteria. Thus, "objective standards" control and "the fact of misrepresentation coupled with proof that the party making it had knowledge of its falsity is enough to warrant drawing the inference that there was a fraudulent intent." Thus, under such circumstances, the mere assertion by a party that it did not intend to deceive will not suffice to escape statutory liability. Such an assertion, standing alone, is worthless as proof of no intent to deceive where there is knowledge of falsehood. But in order to establish knowledge of falsity the plaintiff must show by a preponderance of the evidence that the party accused of false marking did not have a reasonable belief that the articles were properly marked (i.e., covered by a patent). Absent such proof of lack of reasonable belief, no liability under the statute ensues.

6574352v2 910016 57483

*Clontech Labs*, 406 F.3d at 1352-3. *See also, Forest Group*, 590 F.3d at 1300 (quoting the *Clontech* standard regarding the burden of proof).

Here, Relator alleges that "Defendant has falsely marked the products described in Counts I through V with the intent to deceive the public, in violation of 35 U.S.C. §292." Complaint at ¶ 19. Relator also alleges that "Defendant has violated 35 U.S.C. §292(a) by marking (or causing to be marked), with intent to deceive the public, the packaging of the 001 Product with the expired patents no. '179." *Id.* at ¶ 25. *See also*, paragraphs 30, 35, 40, 45 and 50. Relator also alleges that "Defendant had and have no reasonable basis to believe that its use of the expired patents was or is proper or otherwise permitted under federal law." *Id.* at ¶ 54. Under *Clontech*, Relator is not required to allege anything more than this. Neither *Twombly* or the Federal Rules of Civil Procedure require more facts to be pled.

Defendants, citing FRCP 9(b), incorrectly assert that the Relator has failed to plead intent with the required particularity. The reason is simple, this is not a case involving common law or statutory fraud.

On its face, Rule 9(b) applies only to claims "alleging fraud or mistake." Fed. R. Civ. P. 9(b). The Supreme Court has repeatedly declined to extend Rule 9(b)'s requirements to contexts not specifically enumerated in the rule. *See Swierkiewicz v. Sorema NA.*, 534 U.S. 506, 513 (2002) (employment discrimination); *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168 (1993) (under doctrine of "*[e]xpressio unius est exclusion alterius,"* Rule 9(b) did not apply to statutory violation not referenced in the rule). Accordingly, Rule 9(b) does not apply in Section 292 cases. *See, e.g., Astec America v. Power-One, Inc.*, 2008 WL 1734833, * 12 (E.D. Tex. 2008) (Rule 9(b) does not apply to false marking

6574352v2 910016 57483

claims under Section 292). *Astec* quickly dismissed the notion that Rule 9(b) applied to Section 292:

> Power-One provides no case authority for its proposition linking a false marking claim to an averment of fraud. On the other hand, courts have generally interpreted the scope of Rule 9(b) as limited to allegations of fraud and mistake. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) ("Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions. Rule 9(b), for example, provides for greater particularity in all averments of fraud or mistake. This Court, however, has declined to extend such exceptions to other contexts."). Furthermore, assuming that a false marking claim must be pled with particularity, Power-One seeks identification of who falsely marked the products with deceptive intent. Astec has identified in its Complaint that Power-One is the corporate entity responsible for Astec's false marking claim. Greater specificity is not necessary at this early stage of the proceedings. Accordingly, Power-One's Motion to Dismiss Astec's claim of False Marking and in the Alternative a More Definite Statement is hereby DENIED.

*See also, Third Party Verification, Inc. v. Signaturelink, Inc.*, 492 F. Supp. 2d 1314, 1327 (M.D. Fla. 2007) (same; noting "[t]here is no case law that has required the Rule 9 level of pleading to claims for false marking.").[2] The Court should reach the same conclusion here.

However, assuming for the sake of argument that Rule 9(b) applies (which it does not as discussed above), Rule 9(b) specifically provides to the contrary. While a plaintiff must "state with particularity" the "circumstances constituting fraud," there are certain things that "may be alleged *generally*:" "[m]alice, *intent*, knowledge, and other conditions of a person's mind." *See* FRCP 9(b) (emphasis supplied). This makes sense, because things such as knowledge and intent are "uniquely within another party's control," and thus may be pled on information and belief. *See, e.g, Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1330 (Fed. Cir. 2009). Accordingly, Relator's allegations, comport with FRCP 9(b) to the extent Rule 9(b) applies.

---

[2] Defendants have failed to cite to a single case interpreting Section 292 which has required heightened pleadings under Rule 9(b).

9

Relator's remaining allegation, "[u]pon information and belief, Defendant knew, or should know reasonably should know, or reasonably should know, that marking its products with expired patents was and is illegal under Title 35 United States Code," is sufficient pursuant to the explicit terms of Rule 9(b). *See* Complaint at ¶ 54. At this point of the case, the individuals who falsely marked the products (and when they did it) are "uniquely within [Defendants'] control."

Bizarrely, Defendants cite to *Clontech* and discuss the burden of proof. Dkt. No. 6, p. 8. Defendants are getting ahead of themselves as this case is only at the pleading stage and Relator does not have to prove anything at this time. In discussing the burden of proof, Defendants also point to *Pequignot v. Solo Cup Company*, 646 F.Supp.2d 790 (E.D. Va. 2009) but fail to even discuss the case. The district court opinion in *Pequignot* was a fact specific decision related to what the discovery in that case demonstrated. There, Solo Cup claimed that they did not intend to violate Section 292 and claimed that they were advised by an attorney to not bother to remove an expired patent from a plastic cup lid until the mold for the lid had become unusable. *Id* at 793. Solo Cup argued that its reliance on advice of counsel meant that it did not intend to violate Section 292. *Id* at 793-94. The district court accepted this argument and awarded summary judgment in favor of Solo Cup on the eve of trial. *Id* at 799-80.

C.  **Expired Patents Violate Section 292**

As set forth above, the current state of false-marking law in the Federal Circuit is very much supportive of *qui tam* claims brought by individuals like the Relator. Indeed, in *Forest Group*, the Federal Circuit stated that its interpretation of "per offense" as "per article marked" was supported by Congress' articulated desire to motivate citizens with a reward large enough that they would pursue claims against false markers on the government's behalf. 590 F.3d at 1304. Defendants ignore the fact the Relator brings this claim on behalf of the United States, to

redress wrongs and harm to the public and that the government may recoup ½ of any settlement or award. The Federal Circuit has made it clear that false marking harms the public interest because false marking:

> misleads the public into believing that a patentee controls the article in question (as well as like articles), externalizes the risk of error in the determination, placing it on the public rather than the manufacturer or seller of the article, and increases the cost to the public of ascertaining whether a patentee in fact controls the intellectual property embodied in an article.

*Clontech*, 406 F.3d at 1356-7. As the United States' Amicus explains, false marking injures the public for a variety of reasons, including "increasing the cost to the public of ascertaining whether a patentee in fact controls the intellectual property embodied in an article." **Exhibit B**, p. 7, citing *Clontech Labs*. Because a stay will harm the public, Defendants must make a very significant showing of "hardship" or "inequity" to warrant a stay. *Se-Kure Controls*, 675 F.Supp.2d at 878-9 ("If there is even a fair possibility that the stay will work damage to someone else, 'the party seeking the stay 'must make out a clear case of hardship or inequity in being required to go forward.'").

In summary, contrary to Defendants' position that Relator and the public have not suffered a recognized injury, the Federal Circuit has held: "[i]n each instance where it is represented that an article is patented, a member of the public desiring to participate in the market for the marked article must incur the cost of determining whether the involved patents are valid and enforceable." *Clontech Labs*, 406 F.3d at 1356-57, fn. 6. *See also, The Forest Group*, 590 F.3d at 1303 (citing the *Clontech Labs*). Accordingly, marking products with expired patents with intent to deceive violates Section 292. *See, e.g., Pequignot v. Solo Cup*, 540 F.Supp.2d 649, 652 (E.D. Va. 20008) ("An article that was once protected by a now-expired patent is no different than an article that has never received protection from a patent. Both are in

11

the public domain"); *Brinkmeier v. Graco Children's Products, Inc.*, 2010 WL 545896, *3 (D. Del. 2010) ("Under *Clontech*, it appears that a product marked with expired patents and valid patents would be an unpatented article for purposes of §292"); *DP Wagner Manufacturing, Inc. v. Pro Patch Systems, Inc.*, 434 F.Supp.2d 445, 452, fn. 3 (S.D. Tex. 2005) ("It is self evident that once a patent has expired it provides no protection for the article that it described"). *See also, Thomas & Betts Corp. v. Panduit Corp.*, 65 F.3d 654, 658 (7th Cir. 1995) ("The right to copy is even more robust when the copied product was previously patented but the patent has expired"). Here, because the patents marked on the products in question have expired, the patents do not "cover" the products.

Contrary to this weight of authority, Defendants appear argue in that placing expired patents on a product is not a violation of the statute because it is simple to determine whether a patent has expired. This Court may take judicial notice that is not so simple for a member of the public, a lawyer, or even a judge to determine when a patent expires. There are extensions that a patentee could receive that would make the period longer, a foreign priority may exists, there may be a terminal disclaimer (see 37 CFR §1.321) or a failure to pay a maintenance fee that would make the period shorter, and there are statutes at play as well. See 35 U.S.C. §§119, 120, 121, and 154(c)(1); *Cardiac Pacemakers, Inc. v. St. Jude Medical, Inc.*, 381 F.3d 1371, 1383-4 (Fed. Cir. 2004) (district court erred in computing expiration date); *Golan v. Pingel Enterprise, Inc.*, 310 F.3d 1360, fn. 1 (Fed. Cir. 2002) (lawyer erred in computing the expiration date).[3] In fact, even the United States Patent Office has been found to have in correctly calculated the term

---

[3] In fact, it appears that Defendants have incorrectly calculated the expiration of the patent in question by ignoring a divisional patent application that is identified on the face of the patent.

6574352v2 910016 57483

of a patent in relation to FDA regulations. *Wyeth v. Kappos*, 591 F.3d 1364, 1370-72 (Fed. Cir. 2010).

## V. **Conclusion**

Defendants' reliance on the *Stauffer* case ignores well established Federal Circuit law. As *Forest Group* recently held, the incentive-based system set forth in the statute was placed there so that people like the Relator would pursue false-marking claims on behalf of the United States. *Forest Group*, 590 F.3d at 1303-34 ("the false marking statute explicitly permits qui tam actions. By permitting members of the public to sue on behalf of the government, Congress allowed *individuals* to help control false marking.") (emphasis supplied). Given the current state of the law on standing, the position of the United States in support of that current state of the law in the *Stauffer* appeal, and Judge Shadur's recent opinion, this Court should decline to follow the *Stauffer* decision. This is especially true given the fact that *Stauffer* was decided prior to the Federal Circuit's opinion in *Forest Group*.

Finally, the Federal Circuit in *Clontech* carefully considered and articulated the burden of proof in false marking cases. *See also, Forest Group*, 590 F.3d at 1300 (quoting the *Clontech* standard regarding the burden of proof). There is no heightened burden of proof under Section 292. As discussed above, Relator has properly alleged a cause of action against Defendants consistent with these cases and the requirements of FRCP 9(b).

WHEREFORE, for the above reasons, Relator respectfully requests that this Court deny the Defendants' Motion to Dismiss.

Respectfully submitted,

**Attorney for Plaintiff HEATHCOTE HOLDINGS CORP, INC.**

By: /s/ James C. Vlahakis

James C. Vlahakis
Hinshaw & Culbertson LLP
222 North LaSalle, Suite 300
Chicago, IL 60601
t 312-704-300
f 312-704-3001
jvlahakis@hinshawlaw.com

6574352v2 910016 57483

## Certificate of Service

  I hereby certify that on June 8, 2010, I electronically filed the above document with the Clerk of the U.S. District Court, Northern District of Illinois, Eastern Division, using the CM/ECF system.

By: <u>/s/ James C. Vlahakis</u>
James C. Vlahakis
Hinshaw & Culbertson LLP
222 North LaSalle, Suite 300
Chicago, IL 60601
t 312-704-300
f 312-704-3001
<u>jvlahakis@hinshawlaw.com</u>
